UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:  **Elantic Telecom, Inc.**                              **Case No. 04-36897-DOT**
Reorganized Debtor                                    Chapter 11

### MEMORANDUM OPINION

Hearing on debtor's objection to the claim of Highwoods Realty Limited

Partnership was held October 11, 2005. The parties had previously stipulated to the

majority of the relevant facts and to the admission of relevant documentary evidence.

After hearing argument, the court took the issue under advisement.

For reasons set forth below, the court will sustain the objection of debtor to the

claim of Highwoods and will allow the claim in the amount of $198,953.67.

### FACTS

Dominion Telecom, Inc., a subsidiary of Dominion Resources, Inc., as lessee and

Highwoods Realty Limited Partnership as lessor executed an office lease that was dated

August 9, 2001.  Pursuant to sections 6 and 29(w) of the lease, Dominion Telecom was

required to provide Highwoods with a surety bond from a third-party bonding company:

> "*Surety bond.* Tenant acknowledges that Landlord is not willing to enter
> into this Lease without receiving security for the performance of Tenant's
> obligations. Accordingly, in order to induce Landlord to enter into this Lease,
> Tenant agrees to secure a surety bond in favor of Landlord, in the amount of
> $1,000,000, issued by a bonding company reasonably satisfactory to Landlord, to
> serve as security for the payment and performance of Tenant's obligations under
> Exhibit F, to landlord on or before the Commencement Date, and failure to do so
> shall constitute a default under the Lease upon written notice of such default
> being provided by Landlord to Tenant and a Tenant Delay under the work letter
> attached hereto as Addendum No. 2. Landlord shall be entitled to draw on the
> Bond by providing notice to the bonding company that Tenant is in default of this
> Lease beyond all applicable cure periods, and setting forth the amount of damages
> incurred by Landlord as a result of such default. The Bond shall remain in place
> throughout the Term of the Lease and any extension or renewals of this Lease.
> Tenant shall take all steps necessary to renew or replace the Bond or prevent it

from lapsing during the Term or any extension or renewal term, at Tenant's sole cost and expense, and Tenant's failure to do so shall constitute an Event of Default under this Lease. If Tenant desires, it may substitute a guaranty from its parent company, Dominion Resources, subject to Landlord's review of the credit of Tenant's parent company at the time the request is made to substitute a guaranty for the surely bond."

As required, Dominion Telecom obtained a surety bond in favor of Highwoods in the amount of $1,000,000.00, issued by a bonding company reasonably satisfactory to Highwoods to serve as security for the payment and performance of Dominion Telecom's obligations under the lease. Subsequently, effective May 20, 2004, Dominion Telecom was merged into a subsidiary of Elantic Networks, Inc., and thereafter conducted its business under the name Elantic Telecom, Inc.

On July 19, 2004, debtor Elantic commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the bankruptcy code in this court. On July 20, 2004, the debtor filed a motion to approve the rejection of several leases, including the Highwoods lease. On August 20, 2004, this court entered an order granting the lease rejection motion. Under that order, the lease was deemed rejected effective August 20, 2004. On August 23, 2004, Highwoods made demand on the bond and received $1,000,000.00 as proceeds. The bond proceeds came entirely from Dominion Resources, and no property of debtor's estate was transferred to Highwoods in connection with its payment. In addition, sometime after August 20, 2004, Highwoods relet the subject property to an independent third party, Bostwick Laboratories, Inc.

On September 27, 2004, Highwoods filed a proof of claim in the amount of $1,222,073.22 for lease rejection damages and for rent due and owing under the lease on petition date. On that date, debtor owed Highwoods $88,232.76 in rent under the lease for amounts due under the lease before the petition date, less credits in the amount of

2

$63,201.00, for a net prepetition claim of $25,031.76. Applying the formula of §

502(b)(6) of the bankruptcy code, without regard to defenses, setoffs, or credits asserted

by debtor, Highwoods' rejection damages, without reducing the statutory cap by the

amount of the bond money or any type of deposit, are $1,173,921.91.

Neither Dominion Resources nor any other entity has asserted a claim against

debtor for the direct or indirect recovery of any portion of the bond money paid by

Dominion Resources, Inc., to Highwoods in connection with the bond, and the time for

asserting a claim of that nature has expired.

### CONCLUSIONS OF LAW

This court has jurisdiction over debtor's claim objection pursuant to 28 U.S.C. §§

157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

appropriate in this court pursuant to 28 U.S.C. § 1409(a).

Highwoods contends that as lessor under the lease it is entitled to claim the entire

amount provided for under § 502(b)(6) regardless of the actual amount of its damages.

That section provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
> [an] objection to a claim is made, the Court, after notice and a hearing, shall
> determine the amount of such claim…and shall allow such claim…in such
> amount, except to the extent that - …
>> (6) if such claim is the claim of a lessor for damages resulting from the
>> termination of a lease of real property, such claim exceeds –
>>> (A) the rent reserved by such lease, without acceleration, for the
>>> greater of one year, or 15 percent, not to exceed three years, of the
>>> remaining term of such lease, following the earlier of –
>>>> (i) the date of the filing of the petition; and
>>>> (ii) the date on which such lessor repossessed, or the lessee
>>> surrendered, the leased property; plus
>>> (B) any unpaid rend due under such lease, without acceleration, on
>>> the earlier of such dates.

11 U.S.C. § 502(b)(6).

Highwoods' argument is misplaced. Section 502(b)(6) is a cap on the rejection claim of Highwoods and is not a measure of its damages. That application of the statute is widely adopted,[1] and in fact this court has specifically adopted it. See In re WD Insur. Servs., Inc., 2005 Bankr. Lexis 567 (Bankr. E.D. Va., Feb. 28, 2005). The court in that case held that a landlord's claim was not limited by a previous judgment and rather was measured by the loss of its bargain. However, in reaching its holding, the court also stated specifically that "damages otherwise allowable are limited…by the Bankruptcy Code's cap on lease termination damages." Id. at *1-2. To add further emphasis, the court added that "[t]he court stresses that § 502(b)(6) is a cap on the landlord's claim and not a measure of its damages. The amount of the landlord's claim is determined by non-bankruptcy law, and the cap simply limits the bankruptcy estate's exposure to what might otherwise be a very large damage claim arising from the termination of a lease." Id. at *14.

This position is further bolstered by the legislative history of the statute, which discloses that the section is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." H.R. Rep. No. 95-595, at 353 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6309.

Thus, both the case law and legislative history support the court's conclusion that Highwoods' claim is limited by the cap of § 502(b)(6).

---

[1] See 4 Collier on Bankruptcy, ¶ 502.03[7][a] (Alan N. Resnick & Henry J. Sommer eds., 2005) ("Unlike section 502(b)(2), the limitation on damages under section 502(b)(6) has been found to be absolute. Thus, even were the estate of a debtor found to be a solvent estate, an entity holding a claim disallowed under section 502(b)(6) would not be allowed to share in distributions for amounts of the claim so disallowed. The limit set forth in this section is a limit based on "fairness" rather than a rule of convenience.").

Highwoods also contends that even if the cap of section 502(b)(6) applies to its

claim, it is nonetheless entitled to calculate its rejection claim without regard to the

$1,000,000.00 it received under the bond. The court disagrees. Certainly, the legislative

history requires a contrary conclusion. Congress clearly foresaw this situation and

specifically commented that a landlord "will not be permitted to offset his actual damages

against his security deposit and then claim for the balance under [502]. Rather his

security deposit will be applied in satisfaction of the claim that is allowed under this

paragraph." H.R. Rep. No. 95-595, at 354 (1977), reprinted in 1978 U.S.C.C.A.N. 5963,

6310. See also Oldden v. Tonto Realty Corp., 143 F.2d 916 (2nd Cir. 1944); In re All for

A Dollar, Inc., 191 B.R. 262 (Bankr. D. Mass. 1996).

Highwoods does not dispute this case law or legislative history but rather, citing

no law for the proposition, argues that the bond is not the equivalent of a security deposit.

However, this court agrees with the conclusion of the Third Circuit that the relevant

inquiry is whether the parties intended the bond to operate as a security deposit. See

Solow v. PPI Enters., Inc. (In re PPI Enters.) 324 F.3d 197, 209-210 (3rd Cir. 2003). In

that case, the Third Circuit followed the logic set forth by the Second Circuit in Oldden, a

Bankruptcy Act case, and suggested that "[a]lthough the instant case is admittedly

different in that the tenant here pledged his own property to cover the possibility of

default, and the rights of a third party are in no way involved, yet in both situations there

is an attempt on the part of the landlord to insure performance by the tenant. The

difference is purely technical…[I]n one case the insurance is security put up by the tenant

himself, while in the other it is the credit standing of a third party procured by the tenant;

this difference is insufficient to justify divergent rules as to the respective allowable

claims. If the total damages are limited in the one instance, they should likewise be

limited in the other instance." Id., quoting Oldden, 143 F.3d at 921.

As academically intricate as the issue might be, the Third Circuit found it

unnecessary to determine whether to establish separate rules for security deposits

provided by tenants and for letters of credit provided by third parties procured by tenants.

Rather, it found the parties intended the letter of credit at issue to serve as a security

deposit; this intent made further inquiry moot. Id. at 210.

The facts in the present case are similar to those before the Third Circuit. Section

6 of the lease at issue reads:

**Security Deposit.** See Section 29(w)

Section 29(w) in turn contains the following language:

"*Surety bond.* Tenant acknowledges that Landlord is not willing to enter
into this Lease without receiving security for the performance of Tenant's
obligations. Accordingly, in order to induce Landlord to enter into this Lease,
Tenant agrees to secure a surety bond in favor of Landlord, in the amount of
$1,000,000, issued by a bonding company reasonably satisfactory to Landlord, to
serve as security for the payment and performance of Tenant's obligations…"

The parties disagree here as to the role of Dominion Resources in the transactions.

However, based upon the language contained in the lease, the court finds that the bond

was meant as a security deposit, and it is unnecessary to inquire further as to the role of

Dominion Resources. Because the bond was in the nature of a security deposit, its source

is not germane to this inquiry.

Therefore, the amount of the rejection claim of Highwoods as capped by

§ 502(b)(6) must be reduced by the proceeds of the bond. Based upon the numbers as

stipulated by the parties, the total amount of the allowed claim of Highwoods is

$198,953.67, which is comprised of the $ 1,173,921.91 rejection damages, less the

6

$1,000,000.00 of bond proceeds, plus the pre-petition unpaid rent in the amount of

$25,031.76.

Finally, Highwoods and debtor disagree as to the actual amount of damages

sustained by Highwoods. Under either party's analysis, however, the actual damages are

far greater than $198,953.67, the "capped" damages amount.[2] Accordingly, the court

need not decide the underlying question of total actual damages, and the issue is

preserved, to the extent necessary.

### CONCLUSION

Highwoods is entitled to a claim in the amount of $198,953.67, which is

comprised of the $ 1,173,921.91 rejection damages, less the $1,000,000.00 of bond

proceeds, plus the pre-petition unpaid rent in the amount of $25,031.76. The court will

enter a separate order sustaining the claim objection.

Signed_____

    /s/ Douglas O. Tice Jr.
    DOUGLAS O. TICE JR.
    CHIEF JUDGE
    UNITED STATES BANKRUPTCY COURT


Copies:

Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 N. Eighth St., Second Floor
Richmond, VA  23219
Counsel for Elantic Telecom, Inc.

---

[2] "In essence, the measure of damages under [section 502(b)(6)] is the lesser of the statutory minimum or the measure of damages that takes into account other defenses to the contract claim." 4 Collier on Bankruptcy ¶ 502.03[7][i], citing R and O Elevator Co. v. Harmon, 93 B.R. 667 (D. Minn. 1988) and In re Iron-Oak Supply Corp., 169 B.R. 414 (Bankr. E.D. Cal. 1994).

Stanley K. Joynes III, Esq.
JoynesKnight, Ltd.
Post Office Box 1311
Richmond, VA  23218-1311
Counsel for Highwoods Realty LP

Leander Barnhill, Esquire
Assistant United States Trustee
Office of the U. S. Trustee
600 East Main Street, Suite 301
Richmond, VA 23219