UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:  **Elantic Telecom, Inc.**           **Case No. 04-36897-DOT**
         Reorganized Debtor                 Chapter 11

## **MEMORANDUM OPINION**

Before the court is debtor-in-possession Elantic Telecom, Inc.'s[1] amended motion to assume an executory contract entered into between Dominion Telecom, Inc., debtor's predecessor in interest, and FPL FiberNet LLC. FPL objected to the relief requested in the amended motion. Hearing was held on September 21, 2005. After hearing evidence, the court took the matter under advisement and allowed the parties further time to brief the issue.

For reasons set forth below, the court will grant the amended motion of debtor to assume the contract.

### **Findings of Fact.**

Dominion Telecom, Inc., a former subsidiary of Dominion Resources, Inc., and FPL were parties to a Dark Fiber IRU[2] Agreement dated November 15, 2001, in which Dominion Telecom acquired the right to use certain fiber optic filaments and to co-occupy certain communication routes in Florida and the right to use the tangible and intangible property necessary for the use of the fiber. Dominion Telecom paid FPL in excess of $9,000,000.00 for the fiber and the related goods and services under the IRU agreement.

Under the terms of the IRU agreement, Dominion Telecom agreed as follows:

---

[1] Hereinafter referred to as "debtor."
[2] IRU stands for Indefeasible Right of Use. Lighting fiber, in the terminology of the telecommunications industry, means enabling it to carry telecom traffic through the installation of equipment and making any necessary connections. Dark fiber is unlit fiber.

1

24.1 No Assignment  Neither Party shall assign, transfer, delegate or in any other manner dispose of, any of its rights, privileges or obligations under this Agreement without the prior written consent of the other Party, which consent may be withheld in a Party's sole and absolute discretion. Any attempt to make any such assignment, transfer or disposition without such prior written consent shall be null and void . . . .

24.3 No Transfer Customer shall not lease, sublease, grant an IRU or otherwise transfer Customer Fibers to any Third Party, without the prior written consent of Provider, which consent may be withheld in Provider's sole and absolute discretion. Nothing in this Section 24.2 shall prohibit Customer from using its right to use the Customer Fibers under this Agreement for the provision of communications services to Third Parties. Notwithstanding the foregoing, Customer may, in one transaction that occurs at least twenty-four (24) months after the Execution Date, without Provider consent, lease, license, grant a dark fiber IRU or grant similar interests to any Third party in or with respect to not more than six (6) Customer Fibers along any portion of Provider's networks, as a part of a transaction in which such Customer Fibers are combined with an equal or greater number of interlata dark fibers controlled by Customer to form an interlata dark fiber network that is the subject of that transaction. The Customer Fibers that are the subject of the foregoing transaction may not be among the first 1,325 Fiber Miles acquired by Customer under this Agreement. Following any such transaction Customer will remain sole point of contact with Provider relevant to this Agreement.

Subsequently, effective May 20, 2004, Dominion Telecom was merged into a subsidiary of Elantic Networks, Inc., and thereafter conducted its business under the name Elantic Telecom, Inc. On July 19, 2004, debtor Elantic commenced a reorganization case in this court by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor's amended plan of reorganization provides that "[a]ny Executory Contracts or Unexpired Leases which (i) have not expired by their own terms on or prior to the Confirmation Hearing, (ii) have not been assumed, assumed and assigned, or rejected prior to the Confirmation Hearing, (iii) have not been rejected pursuant to the terms of the Plan, or (iv) are not the subject of a motion to reject pending as of the Confirmation Hearing, shall be deemed assumed by the Debtor on the Effective Date, and the entry of the Confirmation Order shall constitute approval of such."

On March 9, 2005, the court approved the disclosure statement filed by debtor. On April 13, 2005, debtor filed a motion seeking authority to assume the FPL IRU agreement as well as authority to assign the IRU agreement to FDN Communications. (Hearing on the motion to assume and assign was set for May 17, 2005.) On that same day, April 13, 2005, the confirmation hearing was held, and the court indicated that it would confirm debtor's Amended Plan. The order of confirmation was entered on April 28, 2005.

FPL filed its objection to the motion to assume and assign on May 10, 2005. At the May 17, 2005, hearing on the motion to assume and assign, debtor and FPL announced that they had entered into a settlement, under which FPL would pay debtor $175,000.00, and debtor would reject the IRU agreement. The court required that debtor provide a ten-day negative notice of the proposed settlement. During the ten-day period, debtor and FDN entered into a revised agreement, under which they would enter into a joint venture to provide wholesale telecom services in which debtor would provide the fiber and FDN would provide the electronics necessary to light the fiber. In exchange, debtor would be entitled to a percentage of all revenue generated through the use of the fiber. Debtor requested court approval for this new agreement by filing an amended motion to assume, and that is the motion currently before the court.

## Conclusions of Law

FPL objects primarily to the assumption and purported assignment of the IRU because FDN, the proposed joint venture partner with debtor, is a competitor of FPL. FPL argues that it never would have entered into the IRU agreement with FDN for that reason, and in addition FPL argues that it entered into the contract with Dominion

3

Telecom based upon its understanding that the fiber purchased would be used only to carry telecom traffic between metropolitan markets, so-called "long haul traffic," and not to carry telecom traffic from one point in a metropolitan area to another, so-called "metro traffic." The exception to this, according to FPL, was that Dominion would be allowed to move telecom traffic from the initial point of connection in a metropolitan area to its final destination in the metropolitan area, so-called "metro tail traffic." At hearing, FPL presented testimony relative to its understanding, at the time the agreement was executed, of the terms of the IRU agreement.

The possible legal scenarios with respect to the proposed creation of the joint venture are (1) debtor seeks to assume the IRU agreement and not assign it to FDN at all, (2) debtor seeks to assume the IRU agreement and partially assign it to FDN, or (3) debtor seeks to assume the IRU agreement and totally assign it to FDN. In all three scenarios, the threshold inquiry is whether debtor may assume the IRU agreement.

DEBTOR'S RIGHT TO ASSUME THE IRU AGREEMENT

Assumption and rejection of executory contracts is governed by § 365 of the Bankruptcy Code. That section grants to the trustee, and hence to the debtor-in-possession, the right to assume or reject any executory contract or unexpired lease of the debtor, subject to certain conditions. 11 U.S.C. § 365(a), (b). Subsection (b) specifically conditions the right to assume upon debtor's cure of any existing default and provision of adequate assurance of future performance. At hearing, the court held that the conditions of subsection (b) had been satisfied by debtor.[3]

---

[3] In its objection to debtor's assumption of the IRU agreement, FPL argued that debtor had breached the IRU agreement's confidentiality provisions and thus had defaulted under the contract. At hearing, the court ruled from the bench that inadequate proof of a breach had been presented and that no damages had been proven. Therefore, the provisions of subsection (b) are no longer an issue before the court.

4

The right to assume or reject is further modified in subsection (c) of § 365, which provides in part that:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if –
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment . . . .

11 U.S.C. § 365(c). Thus, under § 365, the anti-assignment provisions of the IRU agreement are ineffectual unless "applicable law" excuses FPL from accepting performance from FDN and debtor in their joint venture.[4]

FPL argues that allowing FDN to enter into the joint venture with debtor would impermissibly modify FPL's rights under the IRU agreement and that the joint venture would violate the rule set forth by the Fourth Circuit in RCI Technology Corp. v. Sunterra Corp. (In re Sunterra Corp.), 361 F.3d 257 (4th Cir. 2004), that a contract may not be assumed where there is "applicable anti-assignment law predicated on the rationale that the identity of the contracting party is material to the agreement." Id. at 266-67. This prohibition applies regardless of whether an assignment is contemplated by the debtor or trustee, and instead prohibits assumption if any conceivable assignment could violate applicable anti-assignment law.[5]

---

[4] In light of § 365, resolving the issue of whether the creation of the joint venture creates an assignment that would have been impermissible outside of bankruptcy is not necessary. This opinion assumes without deciding that in light of FPL's opposition, the creation of the joint venture would have been impermissible before debtor filed its bankruptcy petition.

[5] The Fourth Circuit, in reaching its conclusion, examined in detail the theories of statutory construction that led it to conclude that the "assume or assign" language of § 365(c) required this conclusion. 361 F.3d at 263-70.

5

FPL is correct in its assertion that since the IRU agreement designates Florida law as controlling, Florida anti-assignment law governs in determining whether FPL is excused from accepting performance under the agreement from debtor and FDN in their joint venture. Florida's Commercial Code imposes restrictions on the assignment of contracts for the sale of goods (1) "where the assignment would materially change the duty of the other party," (2) where it would "impair materially her or his chance of obtaining return performance," or (3) where it would "increase materially the burden or risk" to the other party. Fla. Stat. § 672.210(2) (2002). Also statutorily prohibited is the performance of a duty through a delegate if "the other party has a substantial interest in having her or his original promisor perform or control the acts required by the contract." Fla. Stat. § 672.210(1) (2002). If these statutory provisions are applicable to debtor's case, then "applicable law" would bar the creation of the joint venture, and its creation would be impermissible under § 365(c).

Section 672.210 of the Florida Commercial Code is identical to § 2-210 of the Uniform Commercial Code. Section 2-210 has been applied by the courts to prohibit assignment of a contract to a direct competitor of the non-assigning original party to the contract. See Sally Beauty Co. v. Nexxus Products Co., 801 F.2d 1001, 1007 (7th Cir. 1986); In re Nedwick Steel Co., 289 B.R. 95 (Bankr. N.D. Ill. 2003). FPL urges the court construe § 672.210 to a prohibition of any potential assignment of the debtor's rights under the IRU agreement.

The Eleventh Circuit[6] has considered the effect of § 672.210 in the franchise context. In Shukla v. BP Exploration & Oil, Inc., 115 F.3d 849 (11th Cir. 1997), the court addressed the situation in which a gasoline service station franchisor assigned its rights

---

[6] Florida lies in the Eleventh Circuit.

6

under the franchise to another entity. The franchisee argued that the assignment violated the Petroleum Marketing Practices Act, which allows assignments only if they are "authorized by the provisions of such franchise or by any applicable provision of state law which permits such transfer or assignment without regard to any provision of the franchise." 15 U.S.C. § 2806(b). In finding that the assignment did not cause a constructive termination of the franchise agreement, the Eleventh Circuit applied the test set forth in May-Som Gulf, Inc. v. Chevron U.S.A., Inc., 869 F.2d 917 (6th Cir. 1989): ". . . to sustain a claim . . . that a franchisor assigned and thereby constructively terminated a franchise agreement, the franchisee must prove either: (1) that by making the assignment, the franchisor breached one of the three statutory components of the franchise agreement . . . . and thus, violated the PMPA; or (2) that the franchisor made the assignment in violation of state law and thus, the PMPA was invoked." Id. at 922. The second part of that test parallels the provisions of § 365 at issue in this case.

The franchisee in Shukla argued that the assignment violated state law, in particular Fla. Stat. § 672.210. It claimed that the assignment increased its burdens under the franchise agreement, and therefore it was invalid under Florida law. The franchisor contended that the assignee of the contract was competing with it by selling gasoline at retail prices lower than the franchisee could afford to charge, by discontinuing a supply pricing structure, and by adopting an alternative method of crediting the franchisee for credit card sales.  Those factors, according to the franchisee, increased his burdens under § 672.210 and therefore made the assignment invalid.

The Eleventh Circuit found otherwise. It analyzed each of the three factors cited by the franchisee and in the end found that "[u]nder his contract with BP, [franchisee]

7

always faced the possibility that BP would raise its prices without notice, alter its price support system, or modify its credit card arrangements. In sum, we conclude that [franchisee] has failed to show that BP's assignment…increased his contractual burdens." 115 F.3d at 854.

Most interesting is the parallel between the facts of that case with the one before this court. Both cases hinge on whether the risk of increased competition is an increase of the "burden or risk imposed on him by his contract" and thereby impermissible under § 672.210. To evaluate the arguments, the court must review the original contract between the parties. In Shukla, the court determined that the three factors cited by the franchisee were not covered by the original contract. Notably, the Eleventh Circuit remarked that "[c]ourts have consistently rejected the argument that the discontinuation of extra-contractual, informal arrangements transforms a franchise assignment into a termination" under the Petroleum Marketing Practices Act. Id. at 855.

In this case, FPL argues that the original contract prohibited competition with FPL in the context of the metro traffic services. However, there is no prohibition in the IRU agreement concerning metro traffic services. There are other prohibitions contained in the agreement, for example, limitations on the use of dark fiber for a limited period of time. If FPL had wanted to limit Dominion Telecom's metro traffic services, it could have placed an appropriate provision into the contract. It did not.

FPL relies on an alleged unwritten mutual understanding between the parties that there would be no competition between Dominion Telecom and FPL. However, even if that understanding had existed, it was not placed into the contract. As in Shukla, FPL always faced the possibility of increased competition from the party to whom it

8

transferred certain rights. Any alleged parol understanding does not become a part of the contract. Langford v. Paravant, Inc., 912 So.2d 359, 362 (Fla. Dist. Ct. App. 2005). Rather, the contract terms govern, and in the IRU agreement, there is no indication that the parties mutually agreed and intended that there would be no use of the fiber in connection with metro traffic services or that Dominion Telecom would never place itself in a position of competition with FPL.

As many courts have recognized, § 2-210 of the Uniform Commercial Code, upon which Florida Commercial Code § 672.210 is based, is designed to preserve the bargain the parties strike. Sally, 801 F.2d at 1008; see Baxter Healthcare Corp v. O.R. Concepts, Inc., 869 F.Supp. 606, 610 (N.D. Ill. 1994), aff'd 69 F.3d 785 (7th Cir. 1995). Authorizing the assumption of the IRU agreement will not alter the bargain that Dominion Telecom and FPL struck between one another. Accordingly, § 672.210 would not prohibit the assignment of the IRU agreement.

Since FPL has not proven that there is applicable law that would prevent an assignment of the IRU agreement, the restriction of § 365(c) is inapplicable in this case. Therefore, debtor may assume the IRU contract.

ASSIGNMENT OF THE IRU AGREEMENT

Having determined that the assumption of the contract is permissible, the court must now address the issue of assignment. As summarized above, the possible legal scenarios with respect to the proposed creation of the joint venture are that debtor is seeking to assume the IRU agreement and (1) not assign it to FDN at all, (2) partially assign it to FDN, or (3) totally assign it to FDN. FPL has asserted that by entering into a

9

joint venture with FDN, debtor would be in effect entering into an impermissible partial assignment of the IRU agreement.

The court will first address FPL's contention that the joint venture is a de facto assignment of the IRU agreement to FDN. FPL argues that under the joint venture arrangement between debtor and FDN, debtor is handing over all obligations under the IRU agreement to FDN. However, the evidence reveals that under the proposed joint venture, debtor will remain responsible for all obligations under the IRU agreement. The court views the joint venture as being in the nature of debtor's hiring FDN to perform those functions that debtor, with its one employee, cannot. The compensation that FDN will receive will be a percentage of the proceeds derived from the use of the fiber.

FPL also argues that the proposed joint venture is an impermissible partial assignment of the IRU agreement. However, that analysis is flawed. The prohibition on partial assignments is premised on the theory that a debtor should not be able to assume the favorable provisions of a contract and reject or assign the remaining unfavorable terms. In re Washington Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). This prohibition protects the original contracting party from being deprived of terms that it originally included in its contract with a debtor. In this case, however, the IRU agreement is not being amended and all terms except the anti-assignment clause remain in place. Debtor remains responsible for all obligations under the IRU agreement. The court does not find this to be a partial assignment. As stated above, the proposed joint venture is more in the nature of debtor's hiring FDN to perform certain activities that debtor is unable to do.

Having discounted FPL's arguments that the proposed joint venture is either a de facto or an impermissible partial assignment of the IRU agreement, the court agrees with debtor that the proposed joint venture is not an assignment of the IRU agreement.

### **Conclusion**

The court has determined that the motion to assume is not prohibited by the anti-assignment provisions of the IRU assignment or by applicable state law. Further, the court has determined that the proposed joint venture does not constitute an assignment of the IRU agreement. Therefore, the amended motion of debtor to assume the IRU agreement will be granted. A separate order will be entered.

Signed_____                    /s/ Douglas O. Tice Jr.
                                    _____
                                    DOUGLAS O. TICE JR.
                                    CHIEF JUDGE
                                    UNITED STATES BANKRUPTCY COURT

Copies:

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA  23219
Counsel for debtor

Kevin R. McCarthy, Esq.
William Douglas White, Esq.
McCarthy & White PLLC
8180 Greensboro Drive, Suite 875
McLean, VA  22102
Counsel for FPL

Lee Barnhill, Esq.
Office of the United States Trustee
600 East Main Street, Suite 301
Richmond, VA 23219